UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK RICE,

               Plaintiff,

v.

POLI-TECH SOLUTIONS, LLC and
WWW.IVOTE.COM,

               Defendants.

Case No. 21-CV-1174-JPS

**ORDER**

On October 12, 2021, Plaintiff filed a complaint alleging that Defendants violated the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125, and various Wisconsin state laws by impermissibly using Plaintiff's registered mark "iVOTE®" through the domain www.ivote.com (the "Domain"). ECF No. 1. Plaintiff operates various online political platforms that foster education, while Defendants sold a software through the Domain that purports to count conservative votes. Plaintiff claims that this infringement produced consumer confusion that threatens to damage his brand and diminish the reputation and goodwill that he has cultivated through his various online platforms. *Id.* ¶¶ 18–29. Plaintiff served Poli-Tech Solutions, LLC ("Poli-Tech") on October 26, 2021. ECF No. 3. Plaintiff alleges that Poli-Tech owns and controls the Domain. ECF No. 1 ¶ 5.

**1.    SERVICE ISSUE**

Before proceeding further, the Court must satisfy itself that the Domain has been served. A brief recitation of the procedural history up to this point is necessary to understand the scope of the issue. Since Poli-Tech

has not appeared or otherwise objected to Plaintiff's submissions in this case, the Court will rely on them in developing the factual background.

There is no certificate of service on the docket clearly stating that Plaintiff served the Domain with the complaint. In October 2021, when the Broward County Sheriff served Charles Kirkpatrick ("Kirkpatrick") as the registered agent of Poli-Tech, the Sheriff also attempted to serve Kirkpatrick as the registered agent of the Domain. ECF No. 12-1 at 4. At the time, however, Kirkpatrick claimed to have "no association or knowledge" of the Domain. *Id.* A few weeks later, on November 10, 2021, Kirkpatrick emailed Plaintiff:



*Id.* at 6.

There is no evidence that Plaintiff attempted to serve Political Media, Inc. ("Political Media") with the complaint. However, Plaintiff's evidence sheds doubt on whether Political Media was, in fact, the owner of the

Domain during this time. For example, when Plaintiff visited and downloaded the Domain's privacy compliance statement on November 10, 2021, he found the following introduction:

**Privacy Compliance**

Privacy Overview

Welcome to the web site (ivote.com) the "Site" of Poli-Tech Solutions, LLC

*Id.* at 8. When Plaintiff downloaded the source code for the Domain, it clearly stated that Poli-Tech was the owner of the Domain and provided what appears to be Kirkpatrick's email address, based on the communication reproduced above:

```
var ppDomain = "ivote.com"
var ppCompanyName = "Poli-Tech Solutions, LLC"
var ppAddress = "Crown Center Executive Building 1451 W Cypress Creek Road"
var ppCity = "Fort Lauderdale"
var ppState = "Florida"
var ppZipCode = "33309"
var ppEmail = "Chuck@MakingAmericaRight.com"
var ppPhone = "321.795.7226"
```

ECF No. 12-1 at 16. The "MakingAmericaRight.com" domain was, according to an archived version of the website, owned and operated by Poli-Tech, thus linking Poli-Tech to at least one other enterprise operated by Kirkpatrick. *Id.* at 28. Plaintiff provided a copy of Poli-Tech's articles of organization, which list Kirkpatrick as the registered agent and manager of the company, along with the address at which Kirkpatrick was originally served on behalf of Poli-Tech. *Id.* at 30.

On November 13, 2021, Plaintiff received a text message from someone purporting to be Larry Ward ("Ward"), one of the Political Media employees who Kirkpatrick had said owned the Domain:



*Id.* at 59. The phone number associated with this text message has a (202) area code, i.e., Washington DC, which is where Kirkpatrick said the Political Media company was based. *Id.* at 58. Plaintiff did not take Ward up on this offer. Instead, he filed a motion for default judgment against Poli-Tech and the Domain. ECF No. 5. The Court denied the motion on January 27, 2022, and sent a copy of the order to iVote, Inc., an entity that shared iVOTE®'s name and had appeared in other cases connected to Plaintiff. *See Rice v. IVOTE, Inc.*, 18-cv-1183-PP (E.D. Wis. 2018). This effort to clarify the issue, however, was fruitless: the Court received a letter from iVote, Inc.'s counsel explaining that iVote, Inc. is not a party to the case. *See* ECF No. 9 at 1–2; ECF No. 13.

The strange series of events does not end there. On January 21, 2022—before the Court denied Plaintiff's motion for default—Plaintiff had attempted to serve Kirkpatrick with the motion for default judgment via USPS Priority Mail. However, the documents were returned to sender with the words "Not At This Address" written on the envelope. ECF No. 12 ¶ 12, ECF No. 12-1 at 41. There was no forwarding address, nor any change to Kirkpatrick's address on Poli-Tech's articles of organization. Following this failure to communicate, Plaintiff discovered that the email accounts associated with Kirkpatrick and Poli-Tech were disabled. Additionally, someone had deactivated the website for "makingamericaright" and scrubbed it of meta data and source code. As for the Domain itself, Plaintiff filed a complaint with GoDaddy, which then removed the Domain from the aftermarket to avoid subsequent attempts to sell it.

On February 4, 2022, Plaintiff attempted to serve the amended motion for default judgment, the affidavit in support of the amended motion, the amended proposed default judgment, and the amended brief in support of default judgment, upon Kirkpatrick, the registered agent of Poli-Tech *and* the Domain, via USPS. ECF No. 10-3 at 2. Plaintiff addressed the mail to Kirkpatrick at the address where he was originally served, which was also the address listed for Poli-Tech on its articles of incorporation as of 2021. For good measure, Plaintiff emailed the documents to chuck@makingamericaright.com, which Kirkpatrick had previously used to communicate to Plaintiff, but which Kirkpatrick had deactivated.

All of which leads to the following question: has the Domain been served?

Typically, when a plaintiff purports to sue a website, it really sues the website's operator. *See Darling v. Girard*, No. 15-MC-499-BAH, 2015 WL 13898434, at *2 (D.D.C. Jul. 20, 2015) (noting that "[t]he ACPA creates civil liability for a *person*" and permitting discovery into the identity of the owner and operator of a website) (emphasis added); *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 956 (D. Minn. 2018) (suing a website, the estate of the website's administrator, and the website's forum moderator); *Haynes v. Hooters of Am., LLC*, 893 F.3d 781, 782–83 (11th Cir. 2018) (suing the company that operated a website for violations of the Americans with Disabilities Act arising from that website).

As relevant here, the Lanham Act specifically provides for in rem jurisdiction over a domain name when it is not clear who should be personally liable for infringement. It states:

> The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if—
>
> (i) The domain name violates any right of the owner of a mark registered in the Patent and Trademark Office . . . and
>
> (ii) The court finds that the owner—
>
> (I) Is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action . . .; or
>
> (II) Through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by—
>
> (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

>    (bb) publishing notice of the action as the court may direct promptly after filing the action.

15 U.S.C. § 1125(d)(2)(A). These actions "shall constitute service of process." *Id.* § 1125(d)(2)(B). Remedies are limited to "a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark," *id.* § 1125(d)(2)(D), but this is partially what Plaintiff seeks, ECF No. 1 at 22.

This statute seems to be applicable to these circumstances. It is not clear who owns the Domain, and Plaintiff has been unable to serve the owner of the Domain within the time limits set forth in Federal Rule of Civil Procedure 4(m). There is evidence that the Domain held out Poli-Tech as its owner via its privacy statement and source code in the months of October and November of 2021, and there is evidence that Poli-Tech used the Domain during that period, but there is some confusion in the record as to who owned (and currently owns) the Domain. Thus, it would be most appropriate for Plaintiff to file an in rem civil suit in the federal district where the domain name registrar, the domain name registry, or other domain name authority is located. *Am. Girl, LLC V. Nameview, Inc.*, 381 F. Supp. 2d 876, 882–83 (E.D. Wis. 2005). For this reason, the Court will dismiss the Domain from this case without prejudice. Plaintiff should note that if he proceeds to sue the Domain under Section 1125(d)(2), he must show bad faith on the Domain owner's part in order to prevail. 15 U.S.C. § 1125(d)(1)(B)(ii).

As for Kirkpatrick, the registered agent who accepted service of process on behalf of Poli-Tech but has since evaded service of the amended motion for default judgment, the Court finds that judgment may be properly entered against Poli-Tech. When a defendant has demonstrated a

Page 7 of 12

Case 2:21-cv-01174-JPS   Filed 04/29/22   Page 7 of 12   Document 14

"continued effort to avoid service of process and frustrate the efficient administration of justice[,] [s]uch circumstances warrant the use of default judgment." *Swaim v. Moltan Co.*, 73 F.3d 711, 721 (7th Cir. 1996) (upholding a district court's entry of default judgment and denial of a motion to reconsider where defendant made three attempts at service). Kirkpatrick is Poli-Tech's registered agent for service, and was he properly served with this lawsuit. He therefore received adequate notice that a lawsuit is pending against his company. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 656–57 (1950). Plaintiff made a good faith effort to serve the motion and the amended motion on Kirkpatrick, and these filings are publicly available on PACER. Kirkpatrick's willful evasion of the lawsuit despite knowing, for the past six months, that the lawsuit is pending, frustrates the administration of justice and warrants default judgment. *Swaim*, 73 F.3d at 721.

### 2. DEFAULT JUDGMENT AND DAMAGES

On February 7, 2022, Plaintiff filed an amended motion for default judgment. ECF No. 10. Plaintiff's certificate of service reflects an attempt to serve Poli-Tech with this motion via priority mail. ECF No. 10-3 at 2, ECF No. 12-1 at 38–41. Poli-Tech has not responded to the motion in any fashion (its failings and evasions have been detailed above) and the deadline for doing so has expired. *See* Civ. L.R. 7(b); Fed. R. Civ. P. 6(d) (providing three additional days to respond to motions served by mail). As a result, the Court treats the motion as unopposed. Civ. L.R. 7(d).

The facts pleaded in the complaint establish Poli-Tech's liability for trademark infringement and dilution: Plaintiff trademarked the term "iVOTE" in connection with his educational products and Poli-Tech, with full knowledge of Plaintiff's mark, nonetheless used "iVOTE" in connection

with the sale of its own product, which appears to be some type of software that attempts to profit off an election hoax. ECF No. 1 at 10–14; ECF No. 1-2 at 4 (purporting to sell a software that identifies conservative votes that were cast but not counted). Plaintiff nevertheless bears the responsibility to prove up his damages under Rule 55(b)(2) of the Federal Rules of Civil Procedure. Indeed, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true," and the Court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (citations and quotations omitted). Judgment by default may not be entered without a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id.*

Here, Plaintiff requests the following relief: (1) an accounting, pursuant to 15 United States Code section 1117, for all profits realized as a result of the trademark infringement; (2) disgorgement of all profits realized by Defendants from the sales of services under the name "iVOTE"; (3) statutory damages pursuant to 15 United States Code section 1117; (4) a permanent injunction against Defendants and their agents from selling, or offering for sale, services bearing the trademark iVOTE;[1] (5) transfer of the

---

[1] This remedy is not available because it appears that Poli-Tech has ceased use of the Domain for its commercial purposes, and there does not appear to be a likelihood that Poli-Tech will resume use of the Domain since GoDaddy has taken it off the aftermarket. *See M-F-G Corp. v. EMRA Corp.*, 817 F.2d 410, 411 (7th Cir. 1987) ("Voluntary discontinuation of the offending conduct . . . may make entry of an injunction unnecessary if there is little likelihood of recurrence.") (citations omitted).

Domain to Plaintiff;[2] and (6) costs associated with bringing the action, as well as any other relief that may be just. ECF No. 1 at 21–22.

The Lanham Act provides that when a plaintiff establishes a trademark violation, he is entitled to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). "[T]he plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* The Court has considerable discretion in entering judgment "for such sum as the court shall find to be just," which "shall constitute compensation and not a penalty." *Id.* A prevailing plaintiff in a cyberpiracy action "may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. 1117(d). Although the Seventh Circuit has not specifically addressed this issue, it appears that a Plaintiff may receive both statutory and compensatory damages. *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1206 (11th Cir. 2009) ("[A]n ACPA statutory damages award, which serves as a sanction to deter wrongful conduct, is not duplicative of a service mark infringement actual damages award, which serves to compensate a plaintiff for his injuries.").

To receive actual damages under Section 1117(a), Plaintiff must provide some evidence of those damages to a sum certain, as well as evidence regarding the costs of the action. It would be within the discretion

---

[2] For the reasons explained in Section 1, this remedy is better sought by an in rem proceeding in the appropriate district court.

of the Court to order an accounting of Poli-Tech's profits. If Plaintiff is unable to provide the Court with damages to a sum certain, then the Court will hold a hearing on the matter.

To receive statutory damages under Section 1117(d), there must be some basis for the Court to conclude that that Poli-Tech committed cyberpiracy in bad faith considering the factors set forth in 15 U.S.C. § 1125(d)(1)(B). Some of these factors are clear by the allegations in the complaint and by the submissions regarding attempted service, including the existence of Plaintiff's trademark, the mysterious owner's offer to sell the Domain back to Plaintiff for a profit, and the lack of contact information for the owner. Plaintiff should review these factors and explain, via affidavit, why he believes that Poli-Tech has acted in bad faith. This will assist the Court in awarding statutory damages.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for default judgment, ECF No. 10, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that, within **Twenty-One (21) days of the date of this Order**, Plaintiff file an amended motion for default judgment in which he elects damages and provides (1) a definite amount of damages that the Court can order and (2) an affidavit describing how Poli-Tech acted in bad faith when it used the mark "iVOTE" in a commercial endeavor, such that statutory damages would be appropriate;[3] and

**IT IS FURTHER ORDERED** that the Domain, www.ivote.com, be and the same is hereby **DISMISSED without prejudice** from this action.

---

[3] Consistent with his previous actions, Plaintiff should make a good faith effort to serve Poli-Tech's registered agent.

Dated at Milwaukee, Wisconsin, this 29th day of April, 2022.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge