# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MARK RICE,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>POLI-TECH SOLUTIONS, LLC,<br><br>　　　　　　　　Defendant. | Case No. 21-CV-1174-JPS<br><br>**ORDER** |

　　　　This case comes before the Court on Plaintiff Mark Rice's ("Plaintiff") second amended motion for default judgment against Defendant Poli-Tech Solutions, LLC ("Poli-Tech"). ECF No. 15. For the reasons stated herein, the Court will grant the motion and award Plaintiff $10,470.95 in actual and statutory damages.

**1.　　PROCEDURAL HISTORY**

　　　　On October 12, 2021, Plaintiff filed a complaint alleging that Poli-Tech and former defendant www.ivote.com (the "Domain" and, together with Poli-Tech, "Defendants") violated the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125, which is an addition to the Lanham Act, and various Wisconsin state laws by impermissibly using Plaintiff's registered trademark "iVOTE®" (the "Trademark") through the Domain. ECF No. 1. Plaintiff operates various online political platforms that foster education, while Defendants sold a software program through the Domain that purports to count conservative votes. Plaintiff claims that this infringement produced consumer confusion that threatens to damage his brand and diminish the reputation and goodwill that he has cultivated through his various online platforms. *Id.* ¶¶

18–29. Plaintiff served Poli-Tech with the complaint on October 26, 2021. ECF No. 3. Plaintiff alleges that Poli-Tech owns and controls the Domain in question. ECF No. 1 ¶ 5.

On December 13, 2021 and January 25, 2022, respectively, Plaintiff filed a motion for entry of default and a motion for entry of default judgment against Defendants. ECF Nos. 5, 6. On January 27, 2022, the Court granted Plaintiff's motion for entry of default against Poli-Tech and advised Plaintiff that "without proof of service on [the Domain], the Court will not direct default against it." ECF No. 9 at 1. Upon review of another case that Plaintiff filed, the Court directed the Clerk of Court to mail a copy of its order to counsel of record for an entity that shared the Domain's name. *Id.* at 2. The Court further informed Plaintiff, who is proceeding pro se, that "[f]ollowing an entry of default, the court accepts as true all of the factual allegations in the complaint, except those relating to damages." *Id.* (citations omitted). Accordingly, the Court instructed Plaintiff to file an amended motion for default judgment, wherein he must "prove up damages under [Federal Rule of Civil Procedure] 55(b)(2)" by describing "specifically, the basis for his damages calculation." *Id.* at 3–4.

On February 7, 2022, Plaintiff filed his first amended motion for default judgment against Defendants. ECF No. 10. In an order dated April 29, 2022, the Court reviewed the history of Plaintiff's many attempts to serve process on the Domain, as well as the Clerk of Court's returned mailing from the entity that shared the Domain's name. ECF No. 14 at 1–5. After reviewing that history, the Court held that:

> It is not clear who owns the Domain, and Plaintiff has been unable to serve the owner of the Domain within the time limits set forth in Federal Rule of Civil Procedure 4(m). There is evidence that the Domain held out Poli-Tech as its owner

> via its privacy statement and source code in the months of October and November of 2021, and there is evidence that Poli-Tech used the Domain during that period, but there is some confusion in the record as to who owned (and currently owns) the Domain. Thus, it would be most appropriate for Plaintiff to file an in rem civil suit in the federal district where the domain name registrar, the domain name registry, or other domain name authority is located.

ECF No. 14 at 7 (citing 15 U.S.C. § 1125(d)(2) regarding in rem civil actions under the Lanham Act; *Am. Girl, LLC v. Nameview, Inc.*, 381 F. Supp. 2d 876, 882–83 (E.D. Wis. 2005)). Accordingly, the Court dismissed the Domain without prejudice.

As to Poli-Tech, the Court found that the registered agent who accepted service on behalf of Poli-Tech has since evaded service, including of the amended motion for default judgment, and held that it will enter default judgment against Poli-Tech accordingly. ECF No. 14 at 7–8 (citing *Swaim v. Moltan Co.*, 73 F.3d 711, 712 (7th Cir. 1996) (When a defendant has demonstrated a "continued effort to avoid service of process and frustrate the efficient administration of justice[,] [s]uch circumstances warrant the use of default judgment")). The Court next reviewed the categories of damages that Plaintiff requested against Poli-Tech and determined that Plaintiff's requests for actual damages under 15 U.S.C. § 1117(a) and statutory damages under 15 U.S.C. § 1117(d) may be recoverable.[1] ECF No. 14 at 10–11.

---

[1] Plaintiff also requested (1) a permanent injunction against Defendants and their agents from selling, or offering for sale, services bearing the Trademark, and (2) a transfer of the Domain to Plaintiff. *Id.* at 9–10. The Court noted that the permanent injunction remedy is not available because "it appears that Poli-Tech has ceased use of the Domain for its commercial purposes." *Id.* at 9 n.2. A transfer of the Domain, the Court continued, is better sought by an in rem proceeding, as the Court had discussed earlier in its order. *Id.* at 10 n.2.

## 2. LEGAL STANDARD

Title 15, United States Code, Section 1117(a) covers Plaintiff's request for actual damages in the form of (1) Poli-Tech's profits realized as a result of the trademark infringement, as well as (2) the costs associated with bringing the action. ECF No. 14 at 10. To recover such actual damages, the Court instructed Plaintiff in its prior order to file a second amended motion for default judgment, wherein he "must provide some evidence of those damages to a sum certain, as well as evidence regarding the costs of the action." *Id.*

Title 15, United States Code, Section 1117(d) allows a plaintiff in a cyberpiracy case to recover "an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." ECF No. 14 at 10 (quoting 15 U.S.C. § 1117(d)). Although the Seventh Circuit has not specifically addressed the issue, the Court found that "it appears that a Plaintiff may receive both statutory [under 15 U.S.C. § 1117(d)] and compensatory [under 15 U.S.C. § 1117(a)] damages." ECF No. 14 at 10 (citing *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1206 (11th Cir. 2009) ("[A]n ACPA statutory damages award, which serves as a sanction to deter wrongful conduct, is not duplicative of a service mark infringement actual damages award, which serves to compensate a plaintiff for his injuries.")).

Accordingly, to "assist the Court in awarding statutory damages" under Section 1117(d), the Court instructed Plaintiff to include in his second amended motion for default judgment "some basis for the Court to conclude that Poli-Tech committed cyberpiracy in bad faith considering the factors set forth in 15 U.S.C. § 1125(d)(1)(B)." ECF No. 14 at 11. The Court noted parenthetically, however, that "[s]ome of these factors are clear by

the allegations in the complaint and by the submissions regarding attempted service." ECF No. 14 at 11.

**3. ANALYSIS**

**3.1 Section 1117(a) – Actual Damages**

In his second amended motion for default judgment, Plaintiff requests as actual damages only his costs of filing the instant action, including the costs of service of process. ECF No. 17 at 6. Plaintiff provides an affidavit, with exhibits, demonstrating that these costs are broken down as follows: (1) $402.00 for the Court's filing fee, (2) $60.00 for service of process, and (3) $8.95 to ship the first amended motion for default judgment via United States Priority Mail to Poli-Tech.

In his Complaint, Plaintiff pleads claims under 25 U.S.C. § 1125(a), which allows for the filing of a civil action for trademark infringement when a person uses a trademark in a manner that, *inter alia*, is likely to cause confusion or mistake as to affiliation of the trademark. Plaintiff also pleads claims under 15 U.S.C. § 1125(d), which allows for the filing of a civil action for cyberpiracy, or "bad faith intent to profit," from the use of a trademark. Both Section 1125(a) and 1125(d) permit the recovery of actual damages under 15 U.S.C. § 1117(a).

Plaintiff supports his Section 1125(a) claims by pleading that (1) he properly registered the Trademark, (2) he has consistently displayed the Trademark with the symbol "®" in accordance with 15 U.S.C. § 1111 across all of his digital media, (3) his digital media has a global reach, (4) Poli-Tech began deliberately trading off the Trademark without Plaintiff's authorization through its use of the Domain, and (5) Poli-Tech's actions have misled the public into believing the Domain is associated with Plaintiff's digital media, which has eroded the goodwill Plaintiff has

Page 5 of 11

Case 2:21-cv-01174-JPS    Filed 07/28/22    Page 5 of 11    Document 18

developed. ECF No. 1. Plaintiff supports his Section 1125(d) claims by alleging that Poli-Tech's actions were taken with a bad faith intent to profit, because Poli-Tech had full knowledge of the fame and reach of the Trademark. *Id.*

As discussed *supra* Section 1, default has been entered against Poli-Tech, ECF No. 9 at 3, and therefore, the Court accepts all factual allegations in the Complaint (except as to damages) as true. *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Consequently, the Court will award Plaintiff the total of $470.95 in actual damages. *See* 15 U.S.C. § 1117(a) (when a trademark violation is established, "the plaintiff shall be entitled . . . subject to the principles of equity, to recover . . . the costs of the action"); *Twitch Interactive, Inc. v. Johnston*, No. 16-CV-03404-BLF, 2019 WL 3387977, at *12 (N.D. Cal. July 26, 2019) ("[T]he Court shall award the costs of the action where the defendant has violated 15 U.S.C. §§ 1125(a) or (d)." (citations omitted)).

### 3.2 Section 1117(d) – Statutory Damages

Section 1117(d) permits an award of statutory damages between $1,000 and $100,000, "as the court considers just," in cases involving a violation of Section 1125(d). As discussed *supra* Section 3.1, Section 1125(d) provides a right of action for claims that a trademark was violated in a bad faith intent to profit. "A prevailing plaintiff may recover statutory damages [under Section 1117(d)] in addition to actual damages for infringement of its trademark." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1085 (C.D. Cal. 2012). In his Complaint, Plaintiff pleads that Poli-Tech acted in bad faith, which on a motion for default judgment, the Court accepts as true. *See supra* Section 3.1.

Nonetheless, upon review of his first amended motion for default judgment, the Court ordered Plaintiff to provide an affidavit with his

Page 6 of 11

Case 2:21-cv-01174-JPS   Filed 07/28/22   Page 6 of 11   Document 18

second amended motion addressing the factors for finding bad faith that are set forth in Section 1125(d)(1)(B), to assist the Court in determining the appropriate award of statutory damages. ECF No. 14 at 11. The Section 1125(d)(1)(B) factors include, but are not limited to:

   I. the trademark or other intellectual property rights of the person, if any, in the domain name;
   II. the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
   III. the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
   IV. the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
   V. the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
   VI. the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
   VII. the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
   VIII. the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive

Page 7 of 11

Case 2:21-cv-01174-JPS   Filed 07/28/22   Page 7 of 11   Document 18

> at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
> IX. the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B). In addition to these factors, when awarding statutory damages under Section 1125(d)(1)(B), courts within the Seventh Circuit have considered "the contempt shown for the plaintiff and th[e] court." *Oasis Legal Fin. Operating Co., LLC v. Chodes*, No. 17 C 358, 2020 WL 11629278, at *2 (N.D. Ill. Sept. 9, 2020).

In his affidavit in support of his second amended motion for default judgment, Plaintiff states that Poli-Tech acted in bad faith, as construed under the Section 1125(d)(1)(B) factors, for several reasons. First, Poli-Tech registered the Domain without Plaintiff's consent. ECF No. 17 ¶ 1. Second, Poli-Tech had no prior use of the Trademark in connection with the bona fide offering of any goods or services. *Id.* ¶ 12. Third, Poli-Tech has made no bona fide, non-commercial, or fair use of the Trademark. *Id.* ¶ 13. Finally, Poli-Tech had no basis to believe its use of the Trademark was lawful. *Id.* ¶ 14.

In previous filings, as discussed in greater detail in the Court's prior orders, ECF Nos. 9 and 14, Plaintiff advised the Court of many more examples of Poli-Tech's bad faith conduct. For example, in October 2021, when Poli-Tech's and the Domain's registered agent, Charles Kirkpatrick ("Kirkpatrick"), was served with the Complaint, he claimed to have "no association or knowledge" of the Domain. ECF No. 12-1 at 4. Nonetheless, a few weeks later, Kirkpatrick emailed Plaintiff and stated, in pertinent part, "I don't have anything to do with ivote, a friend of mine loaned me

that name." *Id.* at 6. Kirkpatrick went on to inform Plaintiff that the owners of the Doman are Larry Ward ("Ward") and Trevor Kendrick with Political Media. *Id.* at 6. Despite this representation, when Plaintiff visited and downloaded the Domain's privacy compliance statement in November 2021, the owner was listed as Poli-Tech and the source code provided Kirkpatrick's email address. *Id.* at 8, 16. Three days after Plaintiff received Kirkpatrick's email, Ward, for his own part, sent Plaintiff a text message stating that he "spoke with the domain owner" who is "willing to part with ivote for $2k" and a general release "of chuck [*sic*] and us." *Id.* at 59.

Thereafter, when Plaintiff attempted to serve Kirkpatrick, as the registered agent of Poli-Tech and the Domain, with his first amended motion for default judgment, the documents were returned to sender with the note, "Not At This Address" written on the envelope. *Id.* at 41; ECF No. 12 at 4. No forwarding address was provided, and Plaintiff subsequently discovered that Kirkpatrick's and Poli-Tech's email addresses were disabled. ECF No. 12 at 4–5.

On this record, the Court finds that several of the Section 1125(d)(1)(B) factors are present. Plaintiff owns the Trademark; Poli-Tech does not. Plaintiff has never offered Poli-Tech use of the Trademark, nor has Poli-Tech had fair use of the Trademark or used it in connection with the bona fide offering of any goods or services. Poli-Tech, or whatever entity actually owns the Domain, attempted to sell the Domain to Plaintiff, the Trademark's owner. Poli-Tech and/or the entity that owns the Domain has also intentionally failed to maintain accurate contact information. Indeed, it has gone so far as to provide misleading contact information by listing Poli-Tech as the owner on the Domain itself, but later informing Plaintiff that this was inaccurate when he attempted to serve the Domain.

Page 9 of 11

Case 2:21-cv-01174-JPS   Filed 07/28/22   Page 9 of 11   Document 18

Plaintiff also pleads that Poli-Tech and/or the Domain owner had knowledge of the Trademark's global reach at the time it created the Domain. Additionally, the Domain was registered using the exact spelling of the Trademark. *Twitch Interactive, Inc.*, 2018 WL 1449525, at *12 ("Registering a domain name by incorporating the correctly-spelled infringing mark with other correctly-spelled common words is evidence of malicious conduct."). The Domain also continued to operate after Plaintiff sent it a cease-and-desist letter and filed the instant lawsuit. *Id.* ("Anjomis' continued operation of an infringing domain name [after receiving notice of the same] is indicative of the Anjomis' malicious conduct."); *see also* ECF No. 1 at 13, ECF Nos. 11–12.

The Court further finds that Poli-Tech has demonstrated an "utter failure" to follow the rules of litigation and contempt for both Plaintiff and this Court. *Oasis Legal Fin. Operating Co.*, 2020 WL 11629278, at *2 (defendant's "utter failure" to follow the rules and "contempt for opposing counsel and this court by disregarding the procedural rules" supports award of statutory damages under Section 1125(d)). However, without the benefit of Poli-Tech appearing before the Court, the Court cannot conclude that "no reasonable jury could doubt that [Poli-Tech] intended to trade on the strength of [the Trademark's] name," which courts within the Seventh Circuit consider particularly egregious evidence of cybersquatting. *Id.*; *see also Bittorrent, Inc. v. Bittorrent Mktg. GMBH*, No. 12-CV-02525-BLF, 2014 WL 5773197, at *11 (N.D. Cal. Nov. 5, 2014) ("In a default setting, this Court is hesitant to apply the maximum statutory penalty."). Additionally, while Plaintiff avers the presence of the bad faith factors in his pleadings and affidavit, he has not furnished evidence to support bad faith. *See Twitch Interactive, Inc.*, 2018 WL 1449525, at *11 (determining that a base statutory

damages award of $5,000 was appropriate where the plaintiff "merely alleged [bad faith factors] in paragraph 79 of the Complaint without furnishing evidence to support the assertion.").

Yet, these facts notwithstanding, the Court has determined that Poli-Tech has engaged in some forms of "malicious conduct" in its use of the infringing Domain, and has also failed to follow the rules of litigation, which together justify a statutory damages award of $10,000. *Id.* at *12.

**4. CONCLUSION**

For the reasons stated herein, the Court grants Plaintiff's second amended motion for default judgment, ECF No. 15; orders that Plaintiff shall recover $10,470.95 from Poli-Tech, together with post-judgment interest as provided by law; and dismisses this action.

Accordingly,

**IT IS ORDERED** that Plaintiff Mark Rice's second amended motion for default judgment, ECF No. 15, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff Mark Rice shall recover $10,470.95 from Defendant Poli-Tech Solutions, LLC, together with post-judgment interest as provided by law; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2022.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge